## CLEVELAND HOLLOWAY v. THE STATE.

### No. 1193.   Decided November 1, 1911.

**1.—Theft of Hog—Sufficiency of the Evidence.**

Where, upon appeal from a conviction of theft of a hog, the evidence supported the same, there was no error.

**2.—Same—Ownership.**

Where the evidence supported the allegation of ownership in the indictment, there was no error.

**3.—Same—Fraudulent Taking—Good Faith.**

Where, upon trial of the theft of a hog, the issue was sharply drawn as to whether the alleged hog was the property of the prosecutor or that of appellant's mother, and there was no question of good faith in the case, and the court properly submitted the issue of fraudulent intent, etc., there was no error in refusing a requested charge on the issue of good faith.

Appeal from the District Court of San Augustine. Tried below before the Hon. W. B. Powell.

Appeal from a conviction of a theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

C. E. Lane, Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—Appellant was indicted for the theft of a hog belonging to Tom Pate. He was convicted and given two years confinement in the penitentiary.

There are no bills of exception in the record. The questions raised are raised only on motion for new trial.

The testimony clearly shows that Tom Pate owned a bunch of shoats, which he had raised on his place not far from the appellant's. He had kept them up until a few days before the appellant is charged with stealing one of them. It became so dry that Pate turned them all out so that they could go back and forth to water, which they did. The shoats were very gentle and would only be gone from the house three or four hours before they would return, until two of them were missed some few days after he first turned them out. The hog which defendant is charged with stealing was clearly identified by the State's witnesses as being a male black and white shoat unmarked when Pate turned it out with the others, and as having wattles. A few days after it was turned out the bunch of hogs were seen and identified by other witnesses near the appellant's, and very soon after they were seen and identified some hundred yards distant appellant's dogs were heard to be after and catching certain hogs or hog, which was reasonably shown to be this identical hog of Pate's. A few days after Pate missed this hog, upon inquiry he learned the above facts about the dogging and catching of the hogs. He thereupon went to the appellant's hog pen, which was within fifty yards of appellant's residence, and he found and clearly identified this hog in appellant's pen. The hog was examined and found to have had the wattles cut off and the ears marked presumably in appellant's mark. The marks and the cutting off of the wattles were shown to be recent and not yet healed.

The first ground of appellant's motion for a new trial is that the verdict of the jury is contrary to the evidence and not supported thereby. The evidence which we have carefully gone over does clearly support it and the verdict is in accordance therewith.

The next ground is that the testimony does not show that the property charged to have been stolen was the property of Tom Pate, whom the indictment charges as being such owner. The record clearly shows that the property was Pate's.

We will consider all of the other grounds of the motion together, as they in effect pertain to the same matter. The first of these

grounds is that the evidence does not show any intent by appellant to appropriate the property to his own use and benefit, or show any fraudulent intent on his part to deprive anyone of the value thereof.

The next ground complains of the following portion of the charge of the court: "The gist of the offense of theft is the fraudulent taking, and there can be no theft unless the taking be fraudulent. If neither of the hogs found in the pen of defendant belonged to Tom Pate, the defendant would not be guilty." The complaint is that this charge makes the title depend solely in said Pate, and is on the weight of the evidence.

The next ground is a complaint of this portion of the court's charge: "If you believe or have a reasonable doubt as to whether or not such is a fact that the hogs in the pen were hogs which his, defendant's, mother got from Bud Holloway, or was not the property of Tom Pate, then you will find him not guilty." The complaint is that "this part of said charge makes the title to the property either rest in Tom Pate or the mother of defendant, and does not define clearly to the jury the fact that the defendant would not be guilty of the theft of the hogs if he in good faith put said hogs into his pen, believing at the time he did so that they were the hogs of his mother, the court clearly failing to charge on the good faith of defendant, though it was amply raised by the evidence."

The next complaint is to the following portion of the court's charge: "Theft is complete when the fraudulent taking occurs, which includes the intent to deprive the owner of the value of the property and the appropriation of the property if fraduletnly taken and without the consent of the owner. It is immaterial that the person so taking was from some cause afterwards deprived of the property." The complaint of this portion of the charge is that it was wholly unwarranted by the evidence, was calculated to becloud and prejudice the minds of the jury, and was upon the weight of the evidence.

In this case the issue was sharply drawn of whether or not the hog was the property of Tom Pate or that of appellant's mother. There was no question of good faith in it. As stated above, the evidence clearly showed from the State's standpoint that the property was the property of Tom Pate. The testimony of the appellant himself on this subject is as follows: "I am charged here with having unlawfully taken a hog belonging to Mr. Tom Pate, but I do not know anything about Tom Pate's hog." Then he undertakes to show that the hogs he had in his pen at the time he is charged with the theft and identified by the other witnesses were hogs that he put in his pen, and he says: "I knew where the pigs run all the time. That they were just piny-wood shoats that run in the woods." Again on cross-examination he says: "The hogs were tame hogs. They went out in the woods and come home backwards and forth. They were some pigs my mother bought from Bud Holloway something about two years ago when he went to leave to go to Alabama."

As was said for this court by Judge Hurt in the case of Spencer v. State, 34 Texas Crim. Rep., 65: "The issue in the case was as to whether the cotton sold by defendant to Wright in the city of Waco was or was not the property of the prosecutor.

"This is not a case wherein appellant may have believed the cotton sold by him was his property. If it belonged to the alleged owner, the appellant was guilty of the theft. There was no room for a mistake. The State's theory was that appellant stole the cotton at night from the premises of the alleged owner, carried it to Waco, and sold it. That for the defendant was, that he raised the cotton on his mother's farm; hence it was his property.

"Counsel for appellant contend the court should have instructed the jury that if they believed, or had a reasonable doubt of that fact, that appellant raised or owned the cotton, they should acquit. Such an instruction as this was not requested, nor the omission to give such instruction excepted to at the time. We are therefore to look at the charge as a whole to ascertain if the omission complained of was calculated to injure the rights of appellant. In defining theft, the court instructed the jury, among other things, as follows, to wit: 'By fraudulent taking is meant that the person taking knew at the time of the taking that the property was not his own.' And, in 'applying the law of the case,' to warrant a conviction, the jury were required by the charges to believe from the testimony, beyond a reasonable doubt, that 'the three bales of cotton were the property of T. J. Sanders.'

"These charges evidently and unquestionably involved the title to the property. No jury could be found with ordinary intelligence who would have failed under such instructions to have considered all the testimony tending to show the property belonged to appellant. By these charges the title to the cotton was clearly put in issue, and in deciding this issue all the testimony must have been considered.

"We are of opinion, when the charges are considered, the omission complained of was not calculated to in any wise injure the rights of appellant." See also Beabout v. State, 37 Texas Crim. Rep., 575; Young v. State, 34 Texas Crim. Rep., 290, Code Criminal Procedure, article 723.

The above case quoted from is peculiarly and especially applicable to the facts in this case, and to the charge of the court complained of. Take the charge of the court as a whole in this case, it substantially submitted to the jury the material issue to be found by them, and it was not upon the weight of the testimony.

The last portion of the charge complained of as unwarranted by the evidence was peculiarly applicable, because the appellant himself testified that after keeping up the hogs in his pen a week or week and a half his wife turned them out one morning while he was feeding. "She turned them out and slopped them, and they stayed around the house some little bit, three or four days; they went backwards

and forth in the woods and came up. I saw one of them after that. I saw one of them something like ten or fifteen days after I turned them out. He went off in the piney woods and I have never seen him since."

There being no reversible error pointed out, the judgment is affirmed.

*Affirmed.*